## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **ROBERTA REDDING- GUIDRY,** | § § § | |
| **Plaintiff,** | § | **Case No.:** |
| | § | |
| **v.** | § | |
| | § | |
| **HARMONY PUBLIC SCHOOLS,** | § § | **TRIAL BY JURY DEMANDED** |
| | § | |
| **Defendant.** | | |

---

### PLAINTIFF'S ORIGINAL COMPLAINT

---

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

ROBERTA REDDING-GUIDRY, (hereinafter "Plaintiff"), complains of Harmony Public Schools (hereinafter "Defendant"), and for cause of action would show the Court as follows:

### INTRODUCTION

1. Plaintiff demands a jury trial in this case as to any and all issues triable to a jury.

2. Plaintiff files this complaint and complains about discrimination on the basis of race under Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e, *et seq.,* and pursuant to 42 U.S.C. § 1981.

3. Plaintiff files this complaint and complains about retaliation for a protected

1

activity under Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e, *et seq.,* and pursuant to 42 U.S.C. § 1981.

4.    Plaintiff files this complaint and complains of hostile work environments under Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e, *et seq.*

5.    This action seeks compensatory damages, plus lost wages, punitive damages, attorney's fees, taxable court costs, pre-judgment, and post-judgment interest.

## PARTIES

6.    Plaintiff, Roberta Redding-Guidry is a resident of Houston, Texas.

7.    Defendant, Harmony Public Schools can be served upon its registered agent, Faith Ay, 9321 W. Sam Houston Parkway S., Ste. 2, Houston, Texas 77099.

## VENUE

8.    Venue is appropriate in the United States District Court for the Southern District of Texas, Houston Division, in that Defendant can be said to reside and/or do business in this district as required under 28 U.S.C. § 1391(e). Alternatively, venue is appropriate because a substantial part of the events or omissions giving rise to the claims occurred here. *See* 28 U.S.C. § 1391(b)(2).

## JURISDICTION

9.    This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction) under Title VII, as amended, and 42 U.S.C. § 1981, for employment discrimination based on race, retaliation for a protected activity, and hostile work environment.

## PROCEDURAL REQUISITES

10.    All conditions precedent to the filing of this action have been met by Plaintiff in that she has filed a timely complaint with the Equal Employment Opportunity Commission and has exhausted all other administrative remedies from said agency to pursue her claims.

## FACTS

11.    The Plaintiff identifies as Black.

12.    The Plaintiff was hired by Defendant in August of 2013 as an Eighth Grade Teacher at the Harmony School for Technology.

13.    In Plaintiff's position as Teacher, Lynn Hagemier, who is non-black, was the Plaintiff's Assistant Principal.

14.    In her time teaching at the Harmony School for Technology, the Plaintiff has become one of the most senior members of the staff, led different programs, started different clubs for students, led fundraisers, taken students on trips for competitions, and held various district and school leadership positions.

15.    Despite, the Plaintiff's many accomplishments and qualifications, she has been subjected to discrimination, retaliation, and a hostile work environment because she is Black.

16.    In 2016, the Plaintiff started a club at the school named Future Business Leaders of America. The club was the only club at the school which was sponsored and operated by Black teachers. The club did exceptionally well. However, some of the students who joined the club came from underserved communities and could not afford the fees that were needed to fund the

3

students field trip for a competition.

17. After the Plaintiff and her colleagues held a fundraiser to raise money for the club's field trip, they still needed an extra $1000. The Plaintiff then asked the Principal, Sezgin Aydin (non-white), for the additional funds that were needed for the field trip. However, Mr. Aydin initially denied the Plaintiff's request.

18. It was only after the Plaintiff presented Mr. Aydin with Title 1 Law, showing that the school was given funds to support underserved students in these situations, that Mr. Aydin agreed to give the club the additional funds needed to send the club on the field trip.

19. The other clubs at the school that were operated by non-black teachers never had to go through the same difficulties the Plaintiff's club went through to get funding.

20. In August 2018, Plaintiff was denied the department head position that she applied for. The position was given to a non-black colleague with less work experience. Moreover, the colleague did not apply for the position, instead, it was forced upon them in order to deny the plaintiff the position for discriminatory reasons.

21. In November or December of 2018, a special education coordinator, Rachel Crites (white), told a student in one of the Plaintiff's colleague's classes, an inappropriate joke. The coordinator said to the student "How do you know if a black woman is pregnant? You stick a watermelon up her vagina and if it comes back with a bite mark, she is pregnant."

22. The Plaintiff was the only Black teacher on campus that was pregnant at the

time the comment was made.

23. The Plaintiff and her colleague reported Ms. Crites's comment to the Principal. However, no remedial action was taken by school administration. Ms. Crites is still currently working at the school. The only change that occurred after the Plaintiff reported the incident, was that Ms. Crites no longer supports any of the Plaintiff's special needs students.

24. The Plaintiff was given non-degreed teachers aids to assist her students that need special education services. These teachers' aides are not qualified to provide adequate special needs services.

25. In March 2019, upon returning from maternity leave, the Plaintiff informed the school principal, Celil Basol (non-black), that she was going to pump breast milk for her newborn while at work, and she would require a private place to pump.

26. Mr. Basol (non-black) provided room options for the Plaintiff, so that Plaintiff could use the rooms to coordinate her schedule with Ms. Hagemier.

27. However, Ms. Hagemier and her assistant, Carrie Harden (white) insisted on giving the plaintiff a hard time, and consistently asked her to substitute classes during her designated pumping period. This made it difficult for the Plaintiff to consistently have enough milk to feed her infant daughter after school.

28. Plaintiff struggled to get support from Ms. Hagemier for her pumping request and eventually had to end up sending her the applicable law in order to persuade them to accommodate her request.

29. Previously, white teachers at the school who requested similar accommodation

to pump breast milk while at school, never had to produce the applicable law on breast milk pumping accommodation in order to be accommodated.

30. School administrators even created a private room for the white teachers, that were equipped with couches, so they can pump breastmilk in comfort and privacy. This same accommodation was not afforded to the Plaintiff when she requested breast milk pumping accommodations.

31. From August 2017 through 2021, Plaintiff was not given the elite/honors class.

32. In the 2020-2021 school year, the Plaintiff was denied the honors class. Instead, the class was given to a non-black colleague who was less qualified than the Plaintiff, and who had less established rapport with the students than the Plaintiff.

33. Plaintiff was certified as a teacher and possessed all necessary requirements and certifications for the class. Plaintiff's non-black colleague was not certified as a teacher or enrolled in a teacher's certification program at the time of receiving the honors class.

34. As a result, Plaintiff missed out on bonuses tied to teaching an honors class.

35. In August 2020, Plaintiff was asked to work in the same room with another teacher. It was difficult for Plaintiff to teach under these conditions because she and the other teacher were teaching virtually, and it caused the students in Plaintiff's class to be distracted when they heard the other teacher teaching her class in the background.

36. As a result, Plaintiff asked the school administration if she could move to a space in another building. However, Plaintiff was told there was no additional

6

space in the other building. Plaintiff was then placed in an area in the library, while other teachers were placed in better rooms.

37. Later on, another teacher told the Plaintiff that there actually was additional space in the other building Plaintiff requested to be moved to.

38. In November 2020, Plaintiff received a score of 2 on her teaching evaluation. In all her previous years teaching for the Defendant, she never received lower than a 3 on all her evaluations.

39. As a result of the questionable circumstances surrounding the initial observation, Plaintiff requested another observation. On the second observation she received all 3s.

40. In April 2021, Plaintiff reviewed her previous observations and noticed that the second observation was no longer there, and instead the original observation with the 2 score was back in place.

41. When Plaintiff inquired with the observer about the removal of the second observation, the observer told her that it was "accidentally removed".

42. This prompted the Plaintiff to meet with her Principal and District Academic personnel about the evaluation removal. At this meeting it was revealed that the Principal removed the second observation from her file without consulting the Plaintiff or the observer.

43. In April 2021, Plaintiff was nominated for the prestigious "Teacher of the Year" award, having met all the qualifications required to be awarded the award. However, Plaintiff did not advance past the nomination stage and no one in administration provided the Plaintiff an explanation explaining why she did

not advance any further.

44. A colleague of the Plaintiff told the Plaintiff that in the previous three years, they voted for the Plaintiff to be awarded Teacher of the Year, which caused her to wonder why the Plaintiff never made the ballot for Teacher of the Year those years.

45. An African American has never been awarded "Teacher of the Year" at the Harmony School for Technology.

46. There has been a pattern of school administrators unfairly passing over African Americans for the Teacher of the Year award in favor of their white peers. The Plaintiff's April 2021 experience is another example of that discriminatory pattern. If not for being Black, she would have made it past the nomination stage.

47. Plaintiff has been repeatedly denied the positions of mentor and department head. The school administration told the Plaintiff that the reason for her being denied the positions is because she is not allowed to hold both positions at the same time.

48. However, this rule has been circumvented for a white comparator who was allowed to hold both the mentorship and department head titles at the same time.

49. As a result of the Plaintiff wrongfully being denied the mentor and department head positions, Plaintiff has missed out on the bonuses and stipends that come with those respective positions.

50. In addition, some of the white teachers that have been appointed to mentor

positions never provided any mentoring services, but Lynn Hagemier (white) still gave them the mentorship stipend that came with the position.

51. During the current 2021-2022 school year, school administrators have put the Plaintiff in the smallest classroom in the building, which is not suitable for the learning needs of her number of students.

52. Additionally, the move to the smaller classroom has also isolated the Plaintiff away from all other teachers.

53. Lynn Hagemier has asked school personnel to watch and record the times Plaintiff and other Black teachers entered PDs. White teachers were not monitored by Ms. Hagemier in this fashion.

54. On August 9, 2021, as a result of the constant discriminatory actions taken by Lynn Hagemier and other administrators at the school, Plaintiff filed an internal complaint through the Texas Classroom Teachers Association ("TCTA"), alleging discrimination based on race and the creation of a hostile work environment.

55. On August 17, 2021, Kelly Hebeler, the Employee Relations Director for the Defendant, sent an email to the TCTA staff attorney working with the Plaintiff, stating that she was investigating the claims.

56. On September 29, 2021, the TCTA staff attorney had to send Hebler an email following up on the investigation into the Plaintiff's claims, because nobody from the Defendant had reached out to them or the Plaintiff regarding the complaint.

57. On September 30, 2021, Ms. Hebler responded to the TCTA staff attorney's

email admitting that the investigation has not received the attention it deserves, and that she hopes to have it wrapped up within the next two weeks. However, the investigation continued to not receive the attention it deserved.

58. On December 6, 2021, Ms. Hebeler sent the TCTA staff attorney an email informing them that her last day working for the Defendant was going to be December 9, 2021, so she wanted to finish the investigation prior to her leaving. She then provided the TCTA staff attorney a list questions she wanted answered by December 9th in order to close the investigation.

59. Defendant clearly did not do their due diligence in investigating the Plaintiff's claims. The Defendant's response to Plaintiff's complaint was not prompt or remedial, which left Plaintiff no choice but to file a charge of discrimination with the EEOC.

60. After filing the internal complaint, Plaintiff has still experienced discrimination, and has been retaliated against because of the complaint she filed.

61. The Plaintiff's complaint has been shared with some of her colleagues, which has caused her colleagues to not speak with her in person, leave the teachers' lounge whenever the Plaintiff walks in, and to shut the doors to their classrooms when they know the Plaintiff is in the hallway, essentially treating the Plaintiff as a pariah in retaliation for complaining about race discrimination.

62. In sum, Lynn Hagemier's and other school administrators' actions have all been the result of discriminatory and retaliatory bias that has led to the

Plaintiff experiencing multiple discriminatory actions that has been severe and pervasive in nature, which has resulted in a hostile work environment.

## COUNT I

### RACE DISCRIMINATION UNDER 42 U.S.C. §2000e, *et. seq.*

63.    Plaintiff incorporates the allegations made in Paragraphs 1-62 herein.

64.    Title VII prohibits employers from discriminating against employees based on their race.

65.    Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq*.

66.    Defendant discriminated against Plaintiff, inter alia, by not giving her a pay raise on the basis of an incorrect performance review and repeatedly denying her applications for promotion into department head roles and mentorship assignments.

67.    Had Plaintiff not been Black, she would not have suffered the adverse employment actions she did.

68.    As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C §2000e, *et. seq*. Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorney's fees and costs.

## COUNT II

### RACE DISCRIMINATION UNDER 42 U.S.C. §1981

69.    Plaintiff incorporates the allegations made in Paragraphs 1-62 herein.

70.    The statute located at 42 U.S.C. § 1981(a) provides that "[a] persons within the

jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

71. Title 42 U.S.C. §1981, *inter alia*, protects-at will employees from employment discrimination on the basis of race because the Fifth Circuit does not bar claims by at will-employees for Section 1981 claims. *See* Byers v. Dallas Morning news, Inc., 209 F.3d, 419, 425 (5th Cir. 2000). Defendants offered to pay Plaintiff for her work, and Plaintiff accepted that offer by performing the work. Thus, the parties entered into a contractual arrangement covered by 42 U.S.C. §1981.

72. Defendant, by and through their agents and employees, engaged in the aforementioned practices, policies, customs and usages made unlawful by 42 U.S.C. §1981.

73. Had Plaintiff not been Black, she would not have been subjected to the discrimination that caused her to be the subject of adverse employment action.

74. By the conduct described above, Defendant, Harmony Public Schools intentionally deprived Plaintiff of the same rights as are enjoyed by white individuals to the performance, enjoyment and all benefits and all benefits and privileges, of her contractual relationship with Defendant, in violation of 42 U.S.C. § 1981.

75. As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C §1981 Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorney's fees and costs.

## COUNT III

### RETALIATON ON THE BASIS OF RACE UNDER 42 U.S.C. §2000e, *et. seq.*

76. Plaintiff incorporates the allegations made in Paragraphs 1-62 herein.

77. Title VII prohibits employers from retaliating against employees for complaining about discrimination based on their race.

78. Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq.*

79. Defendant, acting by and through its employees, maintained a policy of retaliation, in violation of the foregoing statutes against Plaintiff.

80. If Plaintiff were not Black, and had she not opposed an unlawful employment practice, she would not have been the subject of adverse employment action as described in paragraphs 1-62.

81. As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C §2000e, *et. seq.* Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorney's fees and costs.

## COUNT IV

### RETALIATON ON THE BASIS OF RACE UNDER 42 U.S.C. §1981

82. Plaintiff incorporates the allegations made in Paragraphs 1-62 herein.

83. The statute located at 42 U.S.C. § 1981(a) provides that "[a] persons within the

13

jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

84. Title 42 U.S.C. §1981, *inter alia*, protects-at will employees from employment discrimination on the basis of race because the Fifth Circuit does not bar claims by at will-employees for Section 1981 claims. *See* Byers v. Dallas Morning news, Inc., 209 F.3d, 419, 425 (5th Cir. 2000). Defendants offered to pay Plaintiff for her work, and Plaintiff accepted that offer by performing the work. Thus, the parties entered into a contractual arrangement covered by 42 U.S.C. §1981.

85. Defendant, by and through their agents and employees, engaged in the aforementioned practices, policies, customs and usages made unlawful by 42 U.S.C. §1981.

86. Defendant, acting by and through its employees, maintained a policy of retaliation, in violation of the foregoing statutes against Plaintiff.

87. If Plaintiff were not Black, and had she not opposed an unlawful employment practice, she would not have been the subject of adverse employment action as described in paragraphs 1-62.

88. As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C §1981 Plaintiff suffered damages, including lost wages, emotional

distress, pain and suffering, and attorney's fees and costs.

## COUNT V

## HOSTILE WORK ENVIORNMENT UNDER 42 U.S.C. §2000e, et. seq

89. Plaintiff incorporates each of the facts alleged in Paragraphs 1-62 herein.

90. At all times relevant, Plaintiff's job performance was always satisfactory or better.

91. This is an action for damages arising out of harassment in employment stemming from race.

92. Defendant has an obligation under the law to assure an environment free from harassment on the basis of race.

93. Defendant, by and through its supervisors and managers, as alleged herein, knowingly created, and maintains a hostile work environment on the basis of race and failed to take remedial action.

94. Defendant fostered a hostile work environment by, inter alia, denying Plaintiff department head and mentorship positions that resulted in missed salary increases and stipends on several occasions, denying Plaintiff opportunities to teach elite/honors classes, monitoring Plaintiff's and other black colleagues movements on campus, moving Plaintiff into smallest classroom at the school which isolated her from her other teaching peers, tampering with her teaching evaluations, and unfairly denying her the "Teacher of the Year" award.

95. As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C §2000e, *et. seq.* Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorney's fees and costs.

15

## PUNITIVE DAMAGES

96.    Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

## ATTORNEY'S FEES

97.    Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent her in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## JURY DEMAND

98.    Plaintiff hereby restates her request for a jury trial

## PRAYER

99.    WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited to appear and answer, and that on final hearing of this cause, Plaintiff has the following relief:

   a.  Back Pay;

   b.  Pre-Judgment Interest on Back Pay;

   c.  Front Pay;

   d.  Compensatory Damages, including, but not limited to, emotional distress;

e.  Attorney's Fees and Costs;

f.  Pain and suffering;

g.  Post-Judgment Interest;

h.  Such other and further relief, at law or in equity, general or special to which

Plaintiff may show he is justly entitled.

Respectfully submitted,

**COANE AND ASSOCIATES, PLLC**

By: */s/Andrew Francis*
Andrew Francis
S.D. Tex #347693
TX Bar #24116525
Email: andrew.francis@coane.com
Bruce A. Coane, Attorney-in-Charge
S.D. Tex. #7205
TX Bar #04423600
Email: bruce.coane@gmail.com
Coane and Associates, PLLC
5177 Richmond Ave., Suite 770
Houston, TX 77056
Telephone: (713) 850-0066
Facsimile: (713) 850-8528