United States District Court
Southern District of Texas
**ENTERED**
November 27, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ROBERTA REDDING-GUIDRY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:22-CV-2299** |
| | § | |
| **HARMONY PUBLIC SCHOOLS,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court[1] are Defendant's Motion to Dismiss Plaintiff's Third[2] Amended Complaint Pursuant to Rule 12(b)(1), 12(b)(6), and Rule 12(f) (Dkt. No. 38-2), Plaintiff's Motion to Oppose and Strike Defendant's Answer (Dkt. No 40), Plaintiff's 7th Amendment Request for Trial by Jury (Dkt. No. 46), Defendant's Motion to Strike Plaintiff's Late Filing (Dkt. No. 50), Plaintiff's Motion to Lift Stay (Dkt. No. 51), Plaintiff's Motion for Leave to File Late Response (Dkt. No. 52), Defendant's Motion to Strike Confidential Settlement Communications (Dkt. No. 55), and Defendant's Opposed Motion for Protective Order (Dkt. No. 60). The Court has considered the motions, all other relevant filings, and the applicable law. For the reasons set forth below, the Court **GRANTS** Defendant's Motion to Dismiss (Dkt. No. 38-2) and **DENIES AS MOOT** all other remaining motions (Dkt. Nos. 40, 46, 50-52, 55, 60).

---

[1] The parties consented to proceed before the Undersigned Magistrate Judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Dkt. No. 19.)

[2] On May 22, 2023, Plaintiff filed her second amended complaint, but titled it "Plaintiff's Third Amended Complaint." (Dkt. No. 35.) For consistency with the parties' briefing, the Court will refer to the document as Plaintiff's Third Amended Complaint.

## I.    BACKGROUND

Plaintiff Roberta Redding-Guidry ("Plaintiff") brought the instant suit against her former employer, Defendant Harmony Public Schools ("Harmony"), alleging violations of 41 U.S.C. § 1981 for discrimination, retaliation, and hostile work environment and 42 U.S.C. § 2000e, et. seq. for constructive discharge. (Dkt. No. 35-1 ¶485-521.)

Plaintiff describes herself as an African American woman. (*Id.* ¶ 455.) Harmony is an open-enrollment charter school system in Texas with several campuses for grades pre-kindergarten through twelfth grade. (Dkt. No. 38-2 at 12.) Plaintiff worked as a teacher for Harmony since December 2013. (Dkt. No. 35-1 ¶ 455.) On August 9, 2021, Plaintiff filed an internal complaint through the Texas Classroom Teachers Association ("TCTA"), alleging discrimination based on race and a hostile work environment. (Dkt. No. 35 ¶ 6.) Plaintiff then filed a charge of discrimination against Harmony with the Equal Employment Opportunity Commission ("EEOC") on March 24, 2022, complaining of race discrimination, retaliation, and a hostile work environment. (*Id.* ¶ 8.) The EEOC issued a right-to-sue letter on April 13, 2022. (*Id.* ¶ 9.) Plaintiff accordingly exhausted all available administrative remedies.[3]

On July 12, 2022, Plaintiff filed this suit, bringing race discrimination, retaliation, and hostile work environment claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. and race discrimination and retaliation claims under 42 U.S.C. § 1981. (Dkt. No. 1.) On August 24, 2022, Plaintiff was allegedly constructively discharged from her role as a teacher. (Dkt. No. 35 ¶ 11.) On November 19, 2022, Plaintiff filed her First Amended

---

[3] "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002).

Complaint, abandoning any claims under 42 U.S.C. § 1981 and adding a claim of constructive discharge. (Dkt. No. 18.) On December 2, 2022, Harmony filed a Motion to Dismiss Plaintiff's First Amended Complaint. (Dkt. No. 21.) On May 8, 2022, this Court granted Harmony's Motion to Dismiss Plaintiff's First Amended Complaint and granted Plaintiff leave to amend. (Dkt. No. 34.) The Court cautioned Plaintiff against filing a duplicate complaint that did not address the issues set forth in the Court's memorandum opinion and order for the sake of refiling. (*Id.* at 27.)

On May 22, 2023, Plaintiff filed her Third Amended Complaint ("TAC"), reframing her race discrimination, retaliation, and hostile work environment claims as being under 41 U.S.C. § 1981. (Dkt. Nos. 35, 35-1.) The TAC cites surveys and articles about discrimination and retaliation in the workplace (*Id.* ¶¶ 13-19), discusses workplace discrimination laws (*Id.* ¶¶ 20-26), and provides background information on Harmony (*Id.* ¶¶ 27-49). The rest of the TAC explains Plaintiff's various factual allegations against Harmony and its employees. (*Id.* ¶¶ 50-193; Dkt. No. 35-1 ¶¶ 194-484.) Finally, the TAC lists Plaintiff's claims for race discrimination, retaliation, and hostile work environment under 41 U.S.C. § 1981 and constructive discharge under 42 U.S.C. § 2000e, *et. seq.* (Dkt. No. 35-1 ¶ 485-521.)

On May 25, 2023, Plaintiff filed Motion for Withdrawal and Substitution of Counsel, which the Court granted. (Dkt. Nos. 36-37.) Plaintiff is currently *pro se*.

On June 5, 2023, Harmony filed a Motion for Leave to Extend Page Limitations for their Motion to Dismiss, which Harmony attached as Exhibit A. (Dkt. Nos. 38, 38-2.) On June 29, 2023, the Court granted Harmony's Motion for Leave to Extend Page Limitations. (Dkt. No. 43.)

Prior to the Court's Order, Plaintiff filed a "Reply to Defendants Response to Third Amended Complaint and Motion to Oppose the Defendants Motion to Dismiss and Strike the

Plaintiffs Third Amended Complaint" (Dkt. No. 39) to which Harmony filed a reply (Dkt. No. 42).

Plaintiff also filed a "Motion to Oppose and Strike Defendant's Answer to Plaintiff's Second Amended Complaint Referred as Third Amended Complaint in Court Record."[4] (Dkt. No. 40.) On July 12, 2023, Harmony filed a response. (Dkt. No. 44.) On August 24, 2023, Plaintiff filed a reply. (Dkt. No. 47.) On August 28, 2023, Harmony filed a Motion to Strike Plaintiff's Reply (*Id.*), arguing that it was filed late. (Dkt. No. 50.) On August 31, 2023, Plaintiff filed a response. (Dkt. No. 52.) On September 5, 2023, Harmony filed a reply. (Dkt. No. 53.) On September 12, 2023, Plaintiff filed a sur-reply. (Dkt. No. 54.)

On August 15, 2023, Plaintiff filed a "7th Amendment Request for Trial by Jury." (Dkt. No. 46.) On August 25, 2023, Harmony filed a response. (Dkt. No. 49.) On August 31, 2023, Plaintiff filed a "Response to 'Defendant' Harmony Public School's Response to Deny Plaintiff's 7th Amendment Request for Trial by Jury and Opposed Motion to Lift Stay Pursuant to Rule 12 and Rule 26(b)(2)." (Dkt. No. 51.) On September 14, 2023, Harmony filed a Motion to Strike Confidential Settlement Communications under Federal Rule of Evidence 408 mentioned in Plaintiff's Response (*Id.*). (Dkt. No. 55.) On September 25, 2023, Plaintiff filed a reply. (Dkt. No. 58.)

On September 28, 2023, Harmony filed a Motion for Protective Order after Plaintiff served her First Set of Interrogatories and Requests for Production of Documents. (Dkt. No. 60.) On October 5, 2023, Plaintiff filed a response. (Dkt. No. 61.)

---

[4] A duplicate of Plaintiff's "Motion to Oppose and Strike Defendant's Answer to Plaintiff's Second Amended Complaint Referred as Third Amended Complaint in Court Record" appears on the docket at Dkt. No. 41 for report purposes.

## II.   LEGAL STANDARD

A lack of subject-matter jurisdiction is asserted through a Rule 12(b)(1) motion to dismiss. Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). In evaluating subject matter jurisdiction on a motion to dismiss, the Court may consider "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen Liab. Corp.*, 757 F.3d 481, 483 (5th Cir. 2014). The party asserting jurisdiction has the burden of proof for a Rule 12(b)(1) motion to dismiss. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court should consider the Rule 12(b)(1) jurisdictional attack before addressing the attack on the merits. *Id.*

## III.   DISCUSSION

### a.   Defendant's Motion to Dismiss

Defendant argues Plaintiff's Third Amended Complaint violated Local Rule 11.3 and should be stricken in accordance with Local Rule 11.4. (Dkt. 38-2 at 15.) Defendant also argues that Plaintiff's race discrimination, hostile work environment, and retaliation claims under 42 U.S.C. § 1981 are barred by Defendant's immunity under the Eleventh Amendment of the United States Constitution. (*Id.*) Further, Defendant contends Plaintiff's Third Amended Complaint fails to state a claim for race discrimination, retaliation, a hostile work environment, or constructive discharge. (*Id.* at 16.) Alternatively, Defendant argues that a majority of Plaintiff's claims occurred

outside of the statute of limitations and should be stricken under Rule 12(f). (*Id.*)

### i. *Defendant's 12(f) Motion to Strike Plaintiff's Third Amended Complaint*

Defendant argues Plaintiff's Third Amended Complaint should be stricken in accordance with Local Rule 11.4 because it was filed by Plaintiff without the signature of the attorney of record at the time. (Dkt. No. 38-2 at 16.) Local Rule 11.3 states that "[e]very document filed must be signed by, or by permission of, the attorney-in-charge." Further, Local Rule 11.4 states that "[a] paper that does not conform to the local . . . rules . . . may be struck on the motion of a party or by the Court." Plaintiff filed her Third Amended Complaint on May 22, 2023, and filed a Motion for Withdrawal and Substitution of Counsel three days later. (Dkt. Nos. 35-36.) Plaintiff is currently *pro se*. For judicial efficiency, the Court denies Defendant's Motion to Strike Plaintiff's Third Amended Complaint.

### ii. *Defendant's 12(b)(1) Motion to Dismiss Race Discrimination, Retaliation, and Hostile Work Environment Claims under 42 U.S.C. § 1981*

Defendant argues that Plaintiff's race discrimination, hostile work environment, and retaliation claims under 42 U.S.C. § 1981 are barred by Defendant's immunity under the Eleventh Amendment of the United States Constitution. (Dkt. No. 38-2 at 17-36.)

"The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) (citing U.S. Const. Amend. XI). Congress did not abrogate the states' sovereign immunity under the Eleventh Amendment when it enacted § 1981. *See Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981) ("Unlike Title VII, Section 1981 contains no congressional waiver of the state's eleventh amendment immunity."). Thus, the Eleventh Amendment bars Plaintiff's Section 1981 claims against Harmony if Harmony is considered an arm of the state. *Perez*, 307 F.3d at 326.

To determine whether Harmony is an arm of the state, this Court must balance the six *Clark* factors. *Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174, 178 (5th Cir. 2023), *cert. denied sub nom. Springboards to Ed., Inc. v. Idea Pub. Sch.*, No. 23-15, 2023 WL 6378484 (U.S. Oct. 2, 2023), and *cert. denied*, No. 23-67, 2023 WL 6378539 (U.S. Oct. 2, 2023).   The factors include: (1) whether state statutes and case law view the entity as an arm of the state; (2) the source of the entity's funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has the authority to sue and be sued in its own name; and (6) whether it has the right to hold and use property. *Clark v. Tarrant County*, 798 F.2d 736, 744-45 (5th Cir. 1986). No single factor is dispositive; however, courts find that "[t]he second factor carries the most weight, while factors five and six are of less importance." *Springboards*, 62 F.4th at 179.

### 1.   State-law characterization

The first *Clark* factor asks whether state statutes and case law view the entity as an arm of the state. Defendant relies on a Texas Supreme Court decision, *El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521 (Tex. 2020), to establish that open-enrollment charter schools are an arm of the state. (Dkt. No. 38-2 at 22.) There, the court concluded "open-enrollment charter schools act as an arm of the State government" and should receive sovereign immunity. *El Paso Educ. Initiative*, 602 S.W.3d at 529-30. "While the Texas courts' decisions on state sovereign immunity are not dispositive as to federal sovereign immunity," the Court agrees with Defendant that this factor weighs in favor of immunity. *See Springboards*, 62 F.4th at 179 (examining the same Texas Supreme Court decision to determine the first *Clark* factor was met).

### 2.   Source of funding

The second *Clark* factor regarding state funding considers "both the state's liability for a

judgment rendered against [an entity] and the state's liability for general debts and obligations." *Perez*, 307 F.3d at 328 (citation omitted). Courts also examine whether any state funding is earmarked for a particular purpose. *Id.*

An open-enrollment charter school receives state funds under Texas Education Code § 12.106, and those state public funds may be used only for public-school purposes as authorized under Texas Education Code § 12.107. Pursuant to those provisions, Harmony received 87.5% of its funding from the State. (Dkt. No. 38-2 at 25.) The Fifth Circuit has not drawn a "bright-line rule as to the amount of non-state funding necessary to hold an entity financially independent from the state." *See Springboards*, 62 F.4th at 180 n.4 (quoting *Daniel v. Univ. of Texas Sw. Med. Ctr.*, 960 F.3d 253, 258 (5th Cir. 2020)) (internal quotations omitted). However, in instances where state funding comprised the "lion's share" of an entity's budget, the Fifth Circuit held it was likely that a judgment rendered against an entity "would be paid in large portion by the state." *Perez*, 307 F.3d at 318; *see also Hopkins v. Wayside Sch.*, No. 1:21-CV-334-RP, 2022 WL 867040, at *3 (W.D. Tex. Mar. 23, 2022), *reconsideration denied sub nom. Hopkins v. Sch.*, No. 1:21-CV-0334-RP, 2023 WL 5186881 (W.D. Tex. Aug. 11, 2023) (finding the source of an open-enrollment charter school's funding supported immunity where it received 89% of its funding from the State); *Armstrong v. Cumberland Acad.*, 549 F. Supp. 3d 543, 547 (E.D. Tex. 2021) (finding the source of an open-enrollment charter school's funding supported immunity where it received 92% of its funding from the State); *cf. Springboards*, 62 F.4th at 180 (describing 25% of funding from non-state sources as "ample funding" that "belies the assertion that Texas would be directly responsible for a judgment.") (internal quotations omitted).

"The funding analysis here resembles that in *Perez*." *Hopkins*, 2022 WL 867040, at *3 (analyzing whether an open-enrollment charter school qualifies for immunity by following the

funding analysis in *Perez*); *see also Armstrong*, 549 F. Supp. 3d at 547 (same). In *Perez*, the Fifth Circuit held that education service centers were arms of the State of Texas. 307 F.3d at 329. The centers, like Harmony here, received most of their funding from the State. *Id.* The Fifth Circuit emphasized: "unlike local school districts, [education service centers] do not possess any tax levying or bonding authority that could be used to raise funds." *Id.*; *see* Tex. Educ. Code § 12.102(4) ("An open-enrollment charter school . . . does not have authority to impose taxes.) Further, the Fifth Circuit has explained that an "inability to independently raise revenue counsels in favor of immunity." *Springboards*, 62 F.4th at 181; *Perez*, 307 F.3d at 329 ("[T]he [entity] do[es] not possess any tax levying or bonding authority that could be used to raise funds. . . . This fact counsels in favor of granting . . . immunity."); *see Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000) (finding no sovereign immunity because waterway commission could raise funds through its statutory taxing and bonding authority).

Additionally, although Texas law did not indemnify the centers in *Perez*, their funding dependence on the State meant that "a judgment rendered against the [c]enters would be paid in large portion by the [S]tate." *Perez*, 307 F.3d at 329; *but see Vogt*, 294 F.3d at 694 (finding the fact that the state had no obligation with respect to judgments against an entity held the "greatest significance" when determining that the second factor weighed against immunity); *see also Springboards*, 62 F.4th at 180 (noting an entity pointed to no evidence that the state was obligated to indemnify it). The same reasoning justifies deeming open-enrollment charter schools as financially dependent on the State, as the Texas Supreme Court has concluded in the context of sovereign immunity in state court. *El Paso Educ.*, 602 S.W.3d at 530 (concluding that "[d]iverting charter school funds to defend lawsuits and pay judgments affects the State's provision of public education and reallocates taxpayer dollars from the legislature's designated purpose") (citing

*Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 124 (Tex. 2015)).

Thus, the Court finds that the second *Clark* factor favors immunity. Because the source of funding is the most important factor, Harmony has a powerful argument for immunity. *See Perez*, 307 F.3d at 327 ("No one [*Clark*] factor is dispositive, though we have deemed the source of an entity's funding a particularly important factor because a principal goal of the Eleventh Amendment is to protect state treasuries.").

### 3.  Local autonomy

The third *Clark* factor considers whether the entity is autonomous or controlled by the state. *See Springboards*, 62 F.4th at 181. Courts specifically "look to the degree of independence enjoyed by the entity and its managers, as well as how its managers are appointed." *Id.* "Frequent and broad oversight by the state suggests that the entity is an arm of the state." *Perez*, 307 F.3d at 330.

Open-enrollment charter schools, like Harmony, are subject to state requirements to report misconduct and to the state education commissioner's authority to inspect records to ensure compliance with those reporting requirements. Tex. Educ. Code § 21.006. The commissioner can also revoke Harmony's charter for any of several reasons, including financial mismanagement. *Id.* § 12.1162(a)(1)–(3). "Provisions like these show that Texas has broad oversight and control over [Harmony]." *Springboards*, 62 F.4th at 181.

Further, as Texas courts have noted, the State has "unfettered discretion" over a charter school. *Tex. Educ. Agency v. Am. YouthWorks, Inc.*, 496 S.W.3d 244, 261–62 (Tex. App—Austin 2016), *aff'd sub nom.*, *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54 (Tex. 2018); *see also El Paso Educ.*, 602 S.W.3d at 529 (noting that open-enrollment charter schools "must adhere to state law and the Commissioner's regulations governing public schools or risk revocation of its charter") (citation omitted). "Although open-enrollment charter schools undeniably possess some

autonomy over discretionary functions, they are also subject to substantial state supervision." *Hopkins*, 2022 WL 867040, at *4; *see also Armstrong*, 549 F. Supp. 3d at 547. Thus, the Court finds that the third *Clark* factor weighs in favor of immunity. *Perez*, 307 F.3d at 330 ("[An entity's] relative lack of autonomy counsels in favor of Eleventh Amendment protection.").

### 4.  Local versus statewide focus

The fourth *Clark* factor considers whether the entity focuses primarily on local or statewide issues. This factor asks, "whether the entity acts for the benefit and welfare of the state as a whole or for the special advantage of local inhabitants." *Pendergrass v. Greater New Orleans Expressway Comm'n*, 144 F.3d 342, 347 (5th Cir. 1998). Harmony and similarly situated institutions are accountable to the State and not to local officials. *See Perez*, 307 F.3d at 330 (focusing on service centers' accountability to Texas officials). Although Harmony argues that it operates the schools for a statewide purpose, the Fifth Circuit has recently clarified that this is "too high a level of generality." *Springboards*, 62 F.4th at 182 (explaining that the Fifth Circuit rejected the "statewide concern" argument in the context of a levee board's arguing that it combatted the "statewide problem" of flooding); *see Vogt*, 294 F.3d at 695; *but see Perez*, 307 F.3d at 330 (holding that service centers are entitled to sovereign immunity because "they serve as administrative divisions of the unitary state educational system"). "Education may be a statewide concern in the abstract, but [Harmony]'s day-to-day 'tasks' consist in operating local schools . . . 'for the special advantage of local inhabitants.'" *Springboards*, 62 F.4th at 182. Thus, the Court finds that the fourth *Clark* factor weighs against immunity.

### 5.  Authority to sue and be sued

The fifth *Clark* factor, "which carries little weight," considers whether the entity can sue and be sued in its own name. *Springboards*, 62 F.4th at 182. The Texas Education Code grants

school districts the right to sue and be sued, but it does not mention open-enrollment charter schools. Tex. Educ. Code § 11.151(a). In nearly identical circumstances, the Fifth Circuit held that the *Clark* factor assessing authority to sue and be sued "slightly favors immunity." *Perez*, 307 F.3d at 331. Here, facing very similar circumstances, Plaintiff has provided no reason to reach a different conclusion in her case. *See Springboards*, 62 F.4th at 182 (finding this factor weighed against immunity where a charter holder conceded that it had a history of suing in its own name). Thus, the Court finds that the fifth *Clark* factor weighs slightly in favor of immunity.

6.   Property ownership and use

The sixth *Clark* factor considers whether the entity may hold and use property. *Springboards*, 62 F.4th at 182. Under Texas law, all property purchased with funds received by a charter holder (1) "is considered to be public property for all purposes under state law," (2) "is property of [Texas] held in trust by the charter holder," and (3) "may be used only for a purpose for which a school district may use school district property." Tex. Educ. Code § 12.128(a)(1)–(3). Although the Texas Education Code was amended to explain that a charter holder "holds title to any property . . . and may exercise complete control over the property," that language fleshes out the scope of the trust over property used by the charter schools as opposed to vesting unrestricted private rights in the property. *Id.* § 12.128(b-1); *see Honors Acad., Inc.*, 555 S.W.3d at 63 (finding that the Texas Legislature "has [not] . . . created vested private-property rights in the creation of the charter school system"). Further, the closing of an open-enrollment charter school requires the state education commissioner to take possession of and assume control over the property used at the school. *See* Tex. Educ. Code § 12.128(b-1), (c). Thus, "[t]he commissioner . . . has a grip on property held by" Harmony. *Armstrong*, 549 F. Supp. 3d at 548 (citing *Premier Learning Acad., Inc. v. Tex. Educ. Agency*, 521 S.W.3d 439, 444 (Tex. App.—Austin 2017, pet. denied) ("The

Education Code gives the TEA commissioner broad authority over FSP funds and the public property purchased or leased with those funds.")).

Despite this, the Fifth Circuit has recently explained that the fact that a charter holder holds title to property, even though the property ultimately belongs to the state, weighs against immunity. *See Springboards*, 62 F.4th at 183 (citing *Pendergrass*, 144 F.3d at 347). Thus, the Court finds that the final *Clark* factor weighs against immunity.

*     *     *

In sum, the *Clark* factors indicate that Harmony is an arm of the state for purposes of sovereign immunity. Accordingly, the Court grants Harmony's Motion to Dismiss pursuant to Rule 12(b)(1) and finds Harmony is entitled to dismissal of Plaintiff's Section 1981 claims without prejudice. *See Sullivan v. Tex. A&M Univ. Sys.*, 986 F.3d 593, 595 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 216, 211 L. Ed. 2d 93 (2021); *Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice.").

### iii.    *Harmony's 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted*

Harmony alternatively argues that Plaintiff's case be dismissed under Rule 12(b)(6). (Dkt. No. 38-2 at 36.) Rule 12(b)(6) authorizes dismissal of a civil action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Having found that the Court lacks jurisdiction over Plaintiff's Section 1981 claims, the Court finds that Plaintiff's remaining constructive discharge claim should be dismissed because it is not a freestanding federal cause of action. *See Bryant v. Skyline Properties, Inc.*, No. 3:05-CV-2503-G, 2006 WL 708647, at *2 (N.D. Tex. Mar. 20, 2006) (recognizing that constructive discharge does not state a separate cause of action and explaining that it is typically considered an element of a cause of action). Thus, to the

extent Plaintiff is asserting constructive discharge as a separate claim, Harmony's Motion to Dismiss is granted.

> iv.  *Harmony's 12(f) Motion to Strike Portions of Plaintiff's Complaint Outside of the Statute of Limitations*

Harmony also alternatively requests that the Court strike paragraphs 3-44, 72-77, 98-303, 415, 462-477 of Plaintiff's TAC, which reference allegations made 300 days prior to Plaintiff's filing date. (Dkt. No. 38-2 at 46-48.) In light of this memorandum opinion, the Court need not reach Harmony's argument.

> b.  <u>The Remaining Motions</u>

Both parties have multiple motions pending before this Court. In light of this memorandum opinion, Plaintiff's Motion to Oppose and Strike Defendant's Answer (Dkt. No 40), Plaintiff's 7th Amendment Request for Trial by Jury (Dkt. No. 46), Defendant's Motion to Strike Plaintiff's Late Filing (Dkt. No. 50), Plaintiff's Motion to Lift Stay (Dkt. No. 51), Plaintiff's Motion for Leave to File Late Response (Dkt. No. 52), Defendant's Motion to Strike Confidential Settlement Communications (Dkt. No. 55), and Defendant's Opposed Motion for Protective Order (Dkt. No. 60) are denied as moot.

## IV.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss (Dkt. No. 38-2) and this action is **DISMISSED WITHOUT PREJUDICE**. The Court **DENIES AS MOOT** all other remaining motions (Dkt. Nos. 40, 46, 50-52, 55, 60).

**SIGNED** in Houston, Texas on November 27, 2023.

Sam S. Sheldon
United States Magistrate Judge